# EXHIBIT 1

# STATE OF MICHIGAN

# COURT OF CLAIMS

| | |
|---|---|
| NEVIN P. COOPER-KEEL, J.D., | **OPINION AND ORDER GRANTING SUMMARY DISPOSITION** |
| Plaintiff, | |
| v | Case No.  20-000091-MM |
| MICHIGAN SECRETARY OF STATE, JOCELYN BENSON, | Hon. Cynthia Diane Stephens |
| Defendant. _____/ | |
| YVONNE BLACK, | |
| Plaintiff, | |
| v | Case No.  20-000096-MZ |
| JOCELYN BENSON, in her official capacity as Secretary of State, | Hon. Cynthia Diane Stephens |
| Defendant. _____/ | |
| ROBERT DAVIS, | |
| Plaintiff, | |
| v | Case No.  20-000099-MM |
| JOCELYN BENSON, in her official capacity as Secretary of State, | Hon. Cynthia Diane Stephens |
| Defendant. _____/ | |

Pending before the Court in these consolidated cases is defendant's motion for summary disposition filed pursuant to MCR 2.116(C)(8) and (C)(10). Because the Court concludes that defendant had authority to send the absent voter ballot applications at issue, the motion is GRANTED and these consolidated cases are DISMISSED.

## I.   BACKGROUND

The pertinent underlying facts in this case are well known to the parties and they have already been set forth in this Court's June 18, 2020 opinion and order denying plaintiff Nevin Cooper-Keel's and Yvonne Black's motions for preliminary injunction. As a result, they need not be recited at length. The issue in this case concerns whether defendant Jocelyn Benson, as Secretary of State, has the authority to send unsolicited absent voter ballot applications to this state's registered voters. The Court's June 18, 2020 opinion and order concluded that plaintiffs Cooper-Keel and Black were unable, at that preliminary stage of the litigation, to demonstrate a likelihood of success on the merits with respect to this issue. After reviewing various amicus filings and the parties' summary disposition papers, the Court concludes that defendant possesses the requisite authority and that plaintiffs' complaints must be dismissed.

## II.   ANALYSIS

### A. PERTINENT SECTIONS OF MICHIGAN ELECTION LAW

In support of their assertions that defendant lacked authority to send unsolicited absent voter ballot applications to this state's registered voters, plaintiffs focus on statutes and caselaw—discussed *infra*—describing the role of county clerks in the absentee voting process. Notably, they focus on MCL 168.759, which describes how "an application for an absent voter ballot *under this section*" may be made. (Emphasis added). Such application may be made in any of the following ways:

-2-

(a) By a written request signed by the voter.

(b) On an absent voter ballot application form provided for that purpose by the clerk of the city or township.

(c) On a federal postcard application. [MCL 168.759(3).]

In general, MCL 168.759(1)-(3) reference the manner in which a voter may apply for an absent voter ballot. These subsections also describe the rather passive role a township, city, or village clerk has in the process, i.e., responding to a request, but only after it has been made.

### B.   AUTHORITY OF THE SECRETARY OF STATE

The Secretary of State is a single executive heading a principal department under Const 1963, art 5, § 3. The Constitution declares that, as a single executive, the Secretary of State "shall" "perform duties prescribed by law." With respect to her statutory duties and the Michigan Election Law, MCL 168.21 declares that the Secretary of State "shall be the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act." Hence, she is granted greater authority than those local election officials over whom she has supervisory control. And in her role as "chief election officer" of this state, the Secretary of State possesses authority to promulgate rules pursuant to the Administrative Procedures Act. MCL 168.31(1)(a). In addition, the statute declares that she "shall" "Advise and direct local election officials as to the proper methods of conducting elections." MCL 168.31(1)(b). She also "shall" provide information and instructions that include "specific instructions on assisting voters in casting their ballots, directions on the location of voting stations in polling places, procedures and forms for processing challenges, and procedures on prohibiting campaigning in the polling places as prescribed in this act." MCL 168.31(1)(c). Furthermore, she also "shall," in her discretion, "Prescribe and require uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections and

registrations." MCL 168.31(1)(e). This subsection gives the Secretary of State authority and discretion to supply that which she "*considers advisable*" in the conduct of elections. This state's Supreme Court has interpreted a previous iteration of MCL 168.31—albeit one containing substantially the same language—and concluded that the same gave the Secretary of State discretionary authority with respect to the conduct of elections. See *Hare v Berrien Co Bd of Election Comm'rs*, 373 Mich 526, 530-531; 129 NW2d 864 (1964).

### C. 2018 PROPOSAL 3

In 2018, this state's electorate adopted Proposal 3, which amended Const 1963, art 2, § 4, in ways that are pertinent to this case. As amended, art 2, § 4(1)(g) provides that every United States citizen who is a qualified elector in this state shall have the right "once registered, to vote an absent voter ballot without giving reason, during the forty (40) days before an election, and the right to choose whether the absent voter ballot is applied for, received and submitted in person or by mail." This right is self-executing, and art 2, § 4 "shall be liberally construed in favor of voters' rights in order to effectuate its purposes." In short, Proposal 3 significantly expanded absentee voting in this state by guaranteeing this state's electorate the constitutional right to utilize this voting method for any reason.

The creation of a constitutional right to vote by absent voter ballot did not, however, alter or amend the Legislature's role under art 2, § 4. Notably, the Legislature, as it had before the adoption of Proposal 3, retained its role under art 2, § 4(2) "to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting."

### D. THE SECRETARY OF STATE POSSESSED THE REQUISITE AUTHORITY

In light of the above statutory and constitutional provisions, the Court concludes that defendant possessed the authority to send absent voter ballot applications to this state's electorate, even where no request for such application has been made. Defendant has clear and broad authority to provide advice and direction with respect to the conduct of elections and registrations. See MCL 168.31(1)(c); MCL 168.21; *Hare*, 373 Mich at 530-531. That is all she has done here: she has provided direction for conducting an election during an unprecedent global pandemic involving a highly contagious respiratory virus. In addition, defendant's statutory authority permits her to prescribe and require supplies and forms that she "considers advisable for use in the conduct of elections and registrations." MCL 168.31(1)(e). Here, defendant sent supplies to registered voters which she considers advisable for conducting an election during the midst of a global pandemic by mailing out absent voter ballot applications. Given the ubiquitous attention paid to the importance of social distancing and limiting large gatherings, particularly indoor gatherings, the notion that it would be "advisable" to inform this state's electorate of its constitutional right to vote by absentee ballot, as opposed to in-person voting, cannot reasonably be disputed. Furthermore, it must be noted that all that has been sent are applications for absent voter ballots, not absent voter ballots themselves. Electors retain the choice whether to fill out the applications. All defendant has done is to send out an application that makes it easier to make that choice and to exercise the new constitutional right to vote by absentee ballot for any reason, having decided that the same was "advisable" for the conduct of the 2020 primary and general elections. In short, the Secretary of State's express statutory authority contemplates the sending of the very "supplies," that are at the heart of plaintiffs' complaints and requests for relief. There is no merit to any contention by plaintiffs that defendant's actions were contrary to the Michigan Election Law.

The Court's conclusion that the Secretary of State's actions were authorized by law is strengthened by the role played by Proposal 3's amendments to art 2, § 4. To that end, art 2, § 4 now guarantees that this state's electorate enjoys the constitutional right to vote, for any reason, by absent voter ballot. This right is self-executing, meaning that it is not subject to additional legislative obligations. See *Promote the Vote v Secretary of State*, __ Mich App __, __; __ NW2d __ (2020) (Docket Nos. 353977; 354096), slip op at 14. Plaintiffs' attempts to read MCL 168.759—which only applies to local election officials—as placing constraints on how absent voter ballot applications may be distributed by defendant run contrary to the self-executing nature of the Constitutional right bestowed by art 2, § 4. In this respect, it appears to the Court that the Legislature would be prohibited by art 2, § 4 from enacting a statute that would prevent defendant from sending absent voter ballot applications to this state's registered voters. Such a result would surely impose an unwarranted obligation on a self-executing Constitutional right. As a result, the Court declines to read existing statutes as prohibiting defendant from taking this action. Indeed, art 2, § 4 directs that the constitutional right must be "liberally construed" in favor of the right to vote by absentee ballot. The Secretary of State, as chief election officer of this state, merely sent applications that will make it easier for voters to exercise that constitutional right, should they choose to do so.

### E.  PLAINTIFFS' CASELAW IS UNPERSUASIVE

The caselaw on which plaintiffs rely in support of a contrary result is unpersuasive. Plaintiffs first cite *Taylor v Currie*, 277 Mich App 85; 743 NW2d 571 (2007). In that case, the Detroit City Clerk, who was a candidate for reelection in that year, authorized a mass-mailing of absent voter ballot applications to potential absentee voters. *Id*. at 88. The application was accompanied by a cover letter in which the Clerk, Jackie Currie, identified herself as "the City

-6-

Clerk and Chairperson for the Election Commission." *Id*. On appeal, the issue concerned whether MCL 168.759 prohibited *city clerks* from mailing unsolicited applications for absent voter ballots to prospective voters. *Id*. at 93. Interpreting MCL 168.759 and the Clerk's authority under that statute, the Court of Appeals concluded that the Clerk lacked the authority to send absent voter ballot applications without a verbal or written request from a voter. *Id*. at 97. Informing this decision was the idea that the "general rule, *with regard to municipal officers*, is that they only have such powers as are expressly granted by statute or by sovereign authority or those which are necessarily to be implied from those granted." *Id*. at 94 (citation and quotation marks omitted; emphasis added). Applying this general rule to MCL 168.759, the Court explained that it was:

> *clear that the city clerk has no powers* concerning the distribution of ballot applications other than those that are expressly granted in the statute. And the power to mail unsolicited ballot applications to qualified voters is not expressly stated anywhere in this statute. [*Id*. at 95 (emphasis added).]

The Court continued by explaining that its interpretation of MCL 168.759 was consistent with the Legislature's role under art 2, § 4 to "preserve the purity of elections . . . ." *Id*. at 96, quoting art 2, § 9. The Court reasoned that permitting the Clerk to distribute absent voter applications in her official capacity "amounts to propaganda at the city's expense" and that the same was "not within the scope of Michigan election laws or the Michigan Constitution." *Id*. at 97.

This Court concludes that *Taylor* is not dispositive in the instant case because, although the case dealt with the same act here, i.e., the sending of absent voter ballot applications, the actors at issue—the Secretary of State versus a local election official—are different, and those actors possess different authority that compels a different outcome in this case. The issue in *Taylor* concerned the authority of a municipal officer under a statute that does not implicate the Secretary

-7-

of State, MCL 168.759. The limited authority of the Clerk in that case constrained the Clerk to only act if expressly permitted by statute. By contrast, defendant is not confined by MCL 168.759. Nor is defendant's authority as limited as the authority possessed by a municipal clerk. Rather, insofar as elections are concerned, defendant's authority is discretionary and she possesses authority over municipal officers. See *Hare*, 373 Mich at 530-531.

Additionally, there are other, significant differences that counsel against relying on *Taylor* in the case at bar. Notably, in *Taylor*, the Court of Appeals raised concerns about what it described as "propaganda" being distributed by the Clerk. It is noteworthy that the Clerk was a candidate for reelection and thus stood to benefit from the very applications she was sending. The Clerk also identified herself in a cover letter sent with the applications. Here, by contrast the Secretary of State is not a candidate for reelection in the November 2020 general election (nor was she in the August 2020 primary election). Thus, the "propaganda" concerns and the "purity of elections" concerns raised by the *Taylor* panel with respect to art 2, § 4 are not present in the instant case.

Furthermore, insofar as art 2, § 4 is concerned, the constitutional amendment effectuated by Proposal 3 must also be kept in mind. This constitutional amendment was effectuated after the Court of Appeals issued its decision in *Taylor*. And this amendment enshrined in this state's constitution the right to cast an absent voter ballot for any reason. Art 2, § 4 must be "liberally construed" in order to advance this newly enshrined right. As noted above, this "liberal construction" favors finding that the Secretary of State has authority to send absent voter ballot applications.

Plaintiffs' reliance on *Fleming v Macomb Co Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 26, 2008 (Docket No. 279966), is no more convincing than their

-8-

reliance on *Taylor*. Initially, the unpublished decision is not binding on this Court. See MCR 7.215(C)(1). And whatever persuasive value the case has is hampered by the same limitations noted above with respect to *Taylor*: (1) it involves a local election official, as opposed to the Secretary of State; (2) the case focused on the interpretation and application of a statute that is of little moment to the Secretary of State's authority, i.e., MCL 168.759; (3) the panel was concerned about the potential self-serving actions of the official who sent the applications, given that the official appeared on the ballot and given that the applications were directed to only one particular group of voters; and (4) the decision was issued prior to the amendment of art 2, § 4. In short, the *Fleming* case is neither controlling nor persuasive in the case at bar.

Finally, the Court is unconvinced that the result in this case is influenced by plaintiff Davis' citation to the recently issued decision in *League of Women Voters of Mich v Secretary of State*, __ Mich App __; __ NW2d __ (2020) (Docket No. 353654). Judge Sawyer's lead opinion, in which Judge Riordan concurred, addressed whether certain statutory provisions pertaining to absentee voting conflicted with the Constitution. *Id*. at 2-3 (opinion by SAWYER, J.). Those issues concerned: (1) whether the 8:00 p.m. deadline on election day for the receipt of absent voter ballots violated various constitutional provisions; (2) whether the statutory requirement that voters pay the postage to return an absentee ballot was unconstitutional; and (3) whether local election clerks violated MCL 168.761's requirement that they "immediately" forward an absent voter ballot upon receipt of an application. *Id*. The case simply did not address, nor was the issue before the *League of Women Voters* panel, whether defendant had authority to mail absent voter ballot applications.

### F.  SEPARATION OF POWERS

As a final matter, the Court notes that plaintiffs Davis and Black appear to allege that defendant's mailing of absent voter ballot applications runs afoul of Const 1963, art 3, § 2

(separation of powers). While not expressly citing art 3, § 2, the complaint—and amended complaint, in the case of plaintiff Black—note the lawmaking authority of the Legislature, and asserts that defendant lacks such lawmaking authority. Thus, plaintiffs appear to allege that defendant's decision to send absent voter ballot applications to this state's electorate was an exercise in lawmaking by defendant. And this exercise in lawmaking, allege plaintiffs Davis and Black, is contrary to the Michigan Election Law.

The separation of powers doctrine "does not require an absolute separation of the branches of government." *Oakland Co v State*, 325 Mich App 247, 261; 926 NW2d 11 (2018) (citation and quotation marks omitted). Caselaw has explained that "the boundaries between these branches need not be airtight." *Id.* (citation and quotation marks omitted). Instead, there may be an overlap of responsibilities that is constitutionally permissible. *Id.*

Here, plaintiffs have failed to state a separation of powers claim on which relief can be granted. The crux of plaintiffs' position is that a separation of powers violation occurred because defendant, by sending unsolicited absent voter ballot applications, essentially engaged in lawmaking by taking an action that was not permitted by statute. However, because the Court has already rejected plaintiffs' contentions about whether defendant possessed the requisite authority, this argument fails to state a claim. And there are no allegations that defendant has exercised the entire power of the Legislative branch, much less that defendant's statutory authority was unconstitutional delegation of authority. See *House of Representatives v Governor*, __ Mich App __, __; __ NW2d __ (2020) (Docket No. 353655), slip op at 17-18 (discussing delegations of authority within the context of the separation of powers doctrine). As a result, the separation of powers allegations fail to state a claim on which relief can be granted, and they will be dismissed under MCR 2.116(C)(8).

III.  CONCLUSION

IT IS HEREBY ORDERED that defendant's motion for summary disposition is GRANTED pursuant to MCR 2.116(C)(8) and (C)(10).

This order resolves the last pending claim and closes the case.

Dated: August 25, 2020

Cynthia Diane Stephens, Judge
Court of Claims